OPINION. Opper, Judge-. After having granted permission to petitioner to change his accounting system from cash to accrual in 1935, respondent in 1941 purported to revoke the permission so granted and to direct the petitioner to employ the cash system, on the ground that to do otherwise would fail properly to reflect his income. This, petitioner refused to do, and the propriety of certain deductions accrued but not paid in cash in the year 1941 is the subject of this controversy. We find it unnecessary to pass upon the propriety of respondent’s action in revoking his prior approval of petitioner’s application, since in our view the facts suffice to place this proceeding in a category where its disposition may rest on narrower grounds. In Zimmerman Steel Co., 45 B. T. A. 1041, it was held that, notwithstanding the accrual system employed by a taxpayer, accruals of items no part of which, in the light of the taxpayer’s financial condition, would in all probability ever be paid in cash were not permissible. Cf. I. T. 3635, 1944—1 C. B. 101. Although that case was reversed on appeal, we said in Florence Pearlman, 4 T. C. 34, 54: * * * With all due deference to the Circuit Court of Appeals for the Eighth Circuit, we adhere to the view expressed in Zimmerman Steel Co., 45 B. T. A. 1041, notwithstanding the reversal in Zimmerman Steel Co. v. Commissioner. 130 Fed. (2d) 1011. In Panhandle Refining Co., 45 B. T. A. 651, we had concluded that, even though a taxpayer was technically insolvent, if there was “no uncertainty as to payment,” the accruals were permissible. It was on this ground that the Panhandle case was distinguished in Zimmerman Steel Co., supra. And in Butler Consolidated Coal Co., 6 T. C. 183, the facts were examined to determine to which of the authorities mentioned that proceeding most nearly corresponded, the conclusion being (p. 192), “The facts in the case at bar are more like those which obtained in Panhandle Refining Co., supra, than in Zimmerman Steel Co., supra." The upshot is that where a taxpayer, even though on the accrual method, accrues items, the payment of which is questionable because of his financial condition, the facts must be examined to determine to what extent there is a reasonable prospect that the payments will actually be made and the result reached must depend upon the ultimate conclusion of fact to which an examination of all the circumstances brings us. This means that our ultimate finding has in effect disposed of this branch of the present proceeding. Petitioner’s financial condition as to both assets and earnings, and the entire history of the transaction as far as it is revealed by the record, disclose the extreme improbability that the payments in question would ever be made. If we are empowered to consider the settlement with creditors made several years later, it reinforces this conclusion, since the amount finally received by them was not sufficient and was not intended to discharge the interest or in fact more than a small fraction of the principal. See Automatic Sprinkler Co., 27 B. T. A. 160; Towers & Sullivan Manufacturing Co., 25 B. T. A. 922, 925; Johnson Locke Mercantile Co. v. Burnet (App. D. C.), 51 Fed. (2d) 434. If not, there is at least nothing to impair it. Since we have found that there was no likelihood that the items accrued would ever be paid, it follows that, on the authority of Zimmerman Steel Co., supra, the deficiency should to that extent be approved. This ground, it is true, is not the one specified in respondent’s statement attached to the deficiency notice. It is our function, however, to redetermine a deficiency and not respondent’s reasons for it. Edgar M. Carnrick, 21 B. T. A. 12; Raoul H. Fleischmann, 40 B. T. A. 672. See Dorothy Whitney Elmhirst, 41 B. T. A, 348. Once the amount of the deficiency is found to be correct, there could be only one reason for failing to give it effect, regardless of the grounds for it propounded by respondent, and that would be that the petitioner was misled in the presentation of his case. In this proceeding, although the authorities to which we have referred are not relied upon either in the deficiency notice or in respondent’s brief, we have little doubt that the underlying issue of fact — which involves the likelihood that the items in question would ever be paid — must have been apparent at all times. In his letter to the petitioner, which purported to revoke the permission previously granted to maintain an accrual system, respondent advised petitioner that “the accrual and deduction from income of items which may be reduced or never paid results in distortion and in the elimination of income by means of theoretical accounting methods * * We accordingly regard it as established that petitioner should have been under no misapprehension as to the scope of proof required when this proceeding was brought to hearing. If, however, we are mistaken in this, and there is additional evidence which is material, but which petitioner has been misled into failing to produce, methods are available by which the record can be reopened for this purpose. On this disposition of the case it is unnecessary to consider whether respondent’s principal reliance — his action in revoking the permission previously granted to petitioner to adopt the accrual method, coupled with the provisions of section 41 permitting him to require the use of a system which would clearly reflect the taxpayer’s income — would be adequate to sustain the deficiency. The remaining contention on behalf of petitioner, however, requires consideration. This is the claim that the dividends on the securities held as collateral by the creditor banks should be treated as having been applied by them to interest and accordingly that to that extent these payments were actually made in cash. Petitioner does not question his obligation to treat the dividends received as income. Under the circumstances, general principles of law would require application of the funds paid on his behalf to the discharge of the interest obligation. Ohio Savings Bank & Trust Co. v. Willys Corporation, (C. C. A., 2d Cir.), 8 Fed. (2d) 463; Theodore B. Plunkett, 41 B. T. A. 700, 709; affd. (C. C. A., 1st Cir.), 118 Fed. (2d) 644. Even if the creditor failed to make the application, a point on which the present record is none too clear, it could still be so treated for purposes of determining the income tax consequences. Estate of Paul M. Bowen, 2 T. C. 1, 5-7. The stipulated amount of the dividends in question should accordingly be added as cash payments in computing the deficiency. Decision will be entered under Bale 50.